IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

EMIKO BOARD,

    *Appellant*,

v.                                                   Case No. 3:14-cv-00822-JAG

AMF BOWLING WORLDWIDE, INC.,

    *Appellee*.

## OPINION

This matter comes before the Court on appeal from an order of the United States Bankruptcy Court for the Eastern District of Virginia entered on November 18, 2014. The Bankruptcy Court denied the appellant Emiko Board's ("Board") Motion for Declaration that Discharge Injunction Is Not Applicable or, in the Alternative, for Extension of Time Within Which to Make Application for Payment of Administrative Expense Claim. *In re AMF Bowling Worldwide, Inc.*, 520 B.R. 185 (Bankr. E.D. Va. 2014). Specifically, Board sought a declaration that would allow her to pursue a tort claim against the appellee AMF Bowling Worldwide, Inc. ("AMF"), the reorganized debtors in the proceeding below.[1]

Judge Kevin R. Huennekens held a hearing on the matter, and on November 18, 2014, held that, because Board was an unknown creditor, she was entitled only to constructive notice of the date by which she had to file her administrative claim against AMF. Further, Judge

---

[1] As explained by the Bankruptcy Court, the Reorganized Debtors in the Chapter 11 case include: AMF Bowling Worldwide, Inc.; 300, Inc.; American Recreation Centers, Inc.; AMF BCH LLC; AMF Beverage Company of Oregon, Inc.; AMF Bowling Centers Holdings Inc.; AMF Bowling Centers, Inc.; AMF Bowling Mexico Holding, Inc.; AMF Holdings, Inc.; AMF WBCH LLC; AMF Worldwide Bowling Centers Holdings Inc.; Boliches AMF, Inc.; Bush River Corporation; King Louie Lenexa, Inc.; Kingpin Holdings, LLC; and Kingpin Intermediate Corp.

Huennekens determined that Board received constitutionally sufficient notice of the deadline by which she had to file her claim against AMF and that she failed to show good cause for an extension of that deadline. Board now appeals that decision to this Court, specifically challenging the conclusions that she was an unknown creditor and that the notice published by AMF met constitutional due process standards.

The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. Based on an extensive review of the record, the Court concludes that Board was an unknown creditor and, thus, was entitled to only constructive notice of the administrative claims bar date. Moreover, AMF's notice published in *The Wall Street Journal* and *The Richmond Times Dispatch* met the requirements of due process. Accordingly, the Court affirms the Order of the Bankruptcy Court.

## I. FACTUAL AND PROCEDURAL HISTORY[2]

On January 27, 2013, an underage drunk driver crashed into Board's car in Tarrant County, Texas, severely injuring her. Allegedly, the drunk driver had been served alcohol at AMF's Tarrant County bowling alley, AMF Euless Lanes. As a result of the accident, the Texas Alcoholic Beverage Commission ("TABC") launched an investigation into AMF Euless Lanes to decide whether the bowling alley sold alcohol to a minor and, if so, how that could affect its liquor license. Enforcement agent Andrew Norton led the investigation and visited AMF Euless Lanes on March 1, 2013; March 15, 2013; and March 23, 2013. Although the investigation focused solely on the bowling alley's compliance with state alcohol laws, Norton mentioned to

---

[2] The parties do not dispute the material background facts. Having reviewed the record below, the Court finds no clear error in the Bankruptcy Court's background narrative and summarizes the expository facts from the Bankruptcy Court's November 18, 2014 Memorandum Opinion. *See In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014) (reviewing factual findings for clear error).

general manager Rusty Dickinson Board's identity as the victim of the car crash and the kinds of injuries she sustained. That investigation closed in April 2013. Eleven months later, in March 2014, Board filed a law suit in Texas state court against AMF for serving the underage drunk driver that caused her injuries.

Unbeknownst to Board, however, AMF had been undergoing bankruptcy proceedings for nearly sixteen months. On November 13, 2012, AMF and its associated companies filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The Bankruptcy Court confirmed their Third Modified Joint Plan of Reorganization on June 25, 2013, with an effective date of July 1, 2013. As relevant to Board's predicament, the Plan called for any administrative claimant, which included a plaintiff holding a claim against AMF that arose after the petition but before the Plan's effective date (i.e., between November 13, 2012, and July 1, 2013), to file his or her claim no later than August 15, 2013 (the "administrative claims bar date"), or else lose it forever. AMF published notice of this deadline in *The Wall Street Journal* and *The Richmond Times Dispatch* on July 12, 2013.

In the Texas litigation, AMF asked the state court to dismiss Board's case on the basis that she failed to file her post-petition, pre-effective-date claim before August 15, 2013. Rather than dismiss the case, however, the Texas state court stayed the matter on September 17, 2014, in order to allow Board to seek clarification of her rights in the Bankruptcy Court. On that same day, Board filed the motion on appeal in this case with the Bankruptcy Court, specifically asking for a declaration that she was not subject to the administrative claims bar date or, in the alternative, granting an extension of time to file her administrative claim.

After holding a hearing on November 5, 2014, the Bankruptcy Court entered an order and opinion denying the motion. Board timely appealed to this Court.

## II. DISCUSSION

Board raises two issues on appeal. First, she argues that the Bankruptcy Court erred by finding her to be an unknown creditor entitled only to constructive notice of the administrative claims bar date. Second, she argues that the Bankruptcy Court erred by determining the notice published in the *Wall Street Journal* and *Richmond Times Dispatch* satisfied her constitutional due process rights. Before addressing these issues, the Court will first discuss the background constitutional principles at play in this matter.

### A. Due Process Requirements

"[A] principal purpose of the Bankruptcy Code is to provide debtors and creditors with 'the prompt and effectual administration and settlement of the [debtor's] estate.'" *Moses v. CashCall, Inc.*, 781 F.3d 63, 72 (4th Cir. 2015) (quoting *Katchen v. Landy*, 382 U.S. 323, 328 (1966)). Along with that comes the similar purpose "to centralize disputes over the debtor's assets and obligations in one forum, thus protecting both debtors and creditors from piecemeal litigation and conflicting judgments." *Id.* These background rules provide context for why AMF's Plan set strict cut-off dates for potential creditors like Board. Without the finality of those deadlines, the bankruptcy process is robbed of the certainty the debtor needs to restructure and pull itself back into solvency.

On the other hand, the Constitution demands that creditors be made aware of these proceedings and offered the opportunity to be heard before the proceedings affect their interests. "This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Accordingly, the Constitution protects

the due process rights of creditors by ensuring that they receive notice of the bankruptcy proceedings and any looming deadlines.

"The type of notice that is reasonable or adequate for purposes of satisfying the due process requirement in this context depends on whether a particular creditor is known or unknown to the debtor." *In re J.A. Jones, Inc.*, 492 F.3d 242, 249 (4th Cir. 2007). If the creditor's identity is actually known to the debtor or "reasonably ascertainable," then that creditor is "known" and must receive "actual notice of the bankruptcy filing and applicable bar date." *Id.* 249-50. If the creditor is unknown, meaning her "identity or claim is wholly conjectural" or her "interests or whereabouts could not with due diligence be ascertained," then constructive notice suffices. *Id.* With no bright-line rule for distinguishing known from unknown creditors, the "analysis must properly focus on the totality of the circumstances in each case." *Id.* at 250.[3]

### B. Known Creditor Analysis

Board's first argument focuses on the known creditor analysis undertaken by the Bankruptcy Court. As explained above, whether a creditor is known or unknown depends on the totality of the circumstances. *J.A. Jones*, 492 F.3d at 250. The Fourth Circuit's analysis of such circumstances in *J.A. Jones* provides instructive guidance on this issue for Board's case.

*J.A. Jones* also involved a car crash. In that case, a woman died from injuries sustained in a car accident on a portion of Interstate 77 where a general contractor supervised a construction project. *Id.* at 245. Over a year after the accident, the general contractor filed a

---

[3] The Fourth Circuit has indicated that, although the legal conclusion of a known creditor analysis is reviewed *de novo*, "it is nonetheless appropriate to give substantial consideration to the bankruptcy court's conclusions in this regard given that court's significant experience and expertise in these matters, which routinely arise in the administration of bankruptcy estates." *Id.* at 250 n.8.

voluntary petition under Chapter 11, but did not give any actual notice to the woman's estate. *Id.* at 247-48. The estate became aware of the bankruptcy proceedings after the expiration of the claims bar deadline, so it sought an extension from the bankruptcy court to allow it to file a wrongful death claim against the debtor. *Id.* The bankruptcy court allowed the extension on the ground that the estate was a known creditor to the contractor, and both the district court and Fourth Circuit affirmed. *Id.* at 248, 253.

In explaining its rationale, the Fourth Circuit found that "[a] plethora of facts and circumstances" compelled the conclusion that the estate was known to the contractor. *Id.* at 251. The car accident received significant press attention, which included statements by the contractor's project manager. *Id.* The project manager discussed the accident with the contractor's claims department, and the contractor had reported the accident to its insurer as "an occurrence or offense which may result in a claim." *Id.* In response, the insurer opened a file, initiated an investigation, and hired legal counsel, all actions known to the contractor. *Id.* The project manager also assembled a file of more than 250 pages, including a police report that listed the victim's "name, address, and date of birth," and sent that file to the contractor's claims department. *Id.* In short, the reasonable diligence required to discover a known creditor would have uncovered the estate and its potential claim against the debtor.

The reasonable diligence required does not mean the debtor must undertake "impracticable and extended searches . . . in the name of due process." *Mullane*, 39 U.S. at 317. "Precedent demonstrates that what is required is not a vast, open-ended investigation." *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (citing *Mullane*, 339 U.S. at 317). Instead, the typical search involves review of "the debtor's own books and records" for those "claimants who are identifiable through a diligent search." *J.A. Jones*, 492 F.3d at 250 (quoting

*Chemetron*, 72 F.3d at 347). Although such a search should be "more than a cursory review," *id.* at 251 (quoting *In re Drexel Burnham Lambert Group Inc.*, 151 B.R. 674, 681 (Bankr. S.D.N.Y. 1993)), a debtor's "careful examination of its own books and records" will suss out known creditors and claims. *Id.*

Here, only one source of information arguably informed AMF of Board's potential claim: TABC agent Norton verbally mentioning Board's name and identity as the victim of the car accident on one occasion to the bowling alley's general manger during the course of an investigation regarding the bowling alley's liquor license. Without any other facts that show that AMF knew more about the accident or had anything in writing pertaining to Board or her claim, the Court cannot conclude that she was known to AMF. A careful review of AMF's records would turn up no trace of Board or her claim. This is not to say that thorough investigations beyond those records would likewise result in no creditors; certainly, had AMF interviewed every general manager of every location across the country about whether they could recall any incidents that might cause someone to want to sue the company, Boards name might have come up. But that is not what the law requires, and "[a] debtor need not be omnipotent or clairvoyant." *Id.* (quoting *In re Drexel Burnham Lambert Group Inc.*, 151 B.R. 674, 681 (Bankr. S.D.N.Y. 1993)). The Bankruptcy Court did not err in deeming Board an unknown creditor of AMF.[4]

---

[4] Board also says the Bankruptcy Court wrongly discounted the testimony of Agent Norton, but this misreads the Bankruptcy Court's analysis. Although the Bankruptcy Court pointed out that neither Norton's contemporaneous notes nor his detailed written report contained any reference to Board's name coming up during his conversations with Dickinson, it concluded that Board was unknown "assuming that Norton's comment did make Dickinson aware of Board's name." 520 B.R. at 194. In any event, neither factual conclusion—that Norton did or did not convey Board's name and her identity as the victim of the car crash—is clearly erroneous. According to Norton's testimony, on March 15, 2013, he verbally told Rusty Dickinson that there was a victim involved in the car accident and that her name was Emiko Board. (Appellant's App. at 346-50.) That conversation was not memorialized in any way by Norton in either his personal notes or final report. (*Id.* at 360, 364-65.) Nor did Norton ever give to Dickinson or AMF any written

### C. Adequacy of Published Notice

Board next argues that, even if she is an unknown creditor, the notice published by AMF in *The Wall Street Journal* and *The Richmond Times Dispatch* did not meet the requirements of due process. The Supreme Court has consistently held that notice by publication meets the due process requirement of notice to unknown creditors. *Mullane*, 339 U.S. at 317; *see also City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953) (recognizing that although "[n]otice by publication is a poor and sometimes hopeless substitute for actual service of notice. . . . when the names, interests and addresses of persons are unknown, plain necessity may cause a resort to publication"). "Courts have interpreted the *Mullane* standard flexibly in the bankruptcy context, measuring the adequacy of notice against the certainty of a creditor's claims." *Bosiger v. U.S. Airways*, 510 F.3d 442, 451 (4th Cir. 2007). With respect to the adequacy of the published notice, "the form of notice chosen must not be substantially less likely to bring home notice than other feasible and customary substitutes." *Vancouver Women's Health Collective Soc. v. A.H. Robins Co., Inc.*, 820 F.2d 1359, 1364 (4th Cir. 1987) (citing *Mullane*, 339 U.S. at 314-15). When making this consideration, a court "must balance the needs of notification of potential claimants with the interest of existing creditors and claimants," which requires consideration of "how much to spend on notification," keeping in mind that "a bankrupt estate's resources are always limited." *Id.*

---

documentation that identified Board as a victim in the car accident. (*Id.* at 360.) For its part, AMF denied that the TABC ever told Dickinson of Board's identity. (*Id.* at 310.) Considering that the choice between "two permissible views of the evidence . . . cannot be clearly erroneous," *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-73 (1985), the Bankruptcy Court did not err by calling into doubt one version of the story yet assuming it to be true for the sake of legal analysis.

8

In this case, AMF published notice of the administrative claims bar date in the July 12, 2013 editions of *The Wall Street Journal* and *The Richmond Times Dispatch*. As relevant here, the notice in each read:

> **NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF THE THIRD MODIFIED JOINT PLAN OF REORGANIZATION OF AMF BOWLING WORDWIDE, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**
>
> **TO ALL CREDITORS, INTEREST HOLDERS, AND OTHER PARTIES IN INTEREST:**
>
> 1. **Bankruptcy Court Approval of the Plan.** On June 25, 2013, the Honorable Kevin R. Huennekens of the United States Bankruptcy Court for the Eastern District of Virginia (the "Court"), entered an order [Docket No. 1049] (the "Confirmation Order") confirming the *Third Modified Plan of Reorganization of AMF Bowling Worldwide, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1023] (with all supplements and exhibits thereto, the "Plan").
>
> . . . .
>
> 5. **Administrative Claims Bar Date.** Other than for Fee Claims and unless otherwise set forth in the Confirmation Order, requests for payment of Allowed Administrative Claims against any Debtor must be Filed with the Court and served, no later than **August 9, 2013** (the "Administrative Claims Bar Date"), which is the first Business Day that is the date 45 days following the Effective Date. . . . Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date that do not timely File and serve such a request pursuant to the procedures set forth herein shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, and such Administrative Claims shall be deemed discharged as of the Effective Date.
>
> . . . .
>
> 7. **Further Information.** If you would like copies of the documents included in the Plan, the Plan Supplement, the Confirmation Order, or any other document filed in these chapter 11 cases, please contact KCC by: (a) calling the Debtor's restructuring hotline at (866) 967-0495; (b) visiting the Debtor's restructuring website at: http://www.kccllc.net/AMF; and/or (c) writing to AMF Balloting Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245. You may also obtain copies of any pleadings filed in the chapter 11 cases for a fee via PACER at http://www.vaeb.uscourts.gov. Please note that KCC cannot give legal advice.

(Appellant's App. 145-46.)

Board first argues that publication of notice in a hard-copy newspaper does not satisfy the requirements of due process. The Supreme Court has explicitly held the opposite. *See Mullane*, 339 U.S. at 317. Board argues that newsprint notice fails to protect the due process rights of today's digital citizen. Even if that were true, this Court cannot overturn or revise Supreme Court precedent.

Next, Board argues that, even if published notice may be appropriate in newspapers, it must be published more than once or in more than one national newspaper. But notice such as this has been upheld as adequate in various courts. *See, e.g., In re Circuit City Stores, Inc.*, 439 B.R. 652, 661 (E.D. Va. 2010) (upholding single published notice in *The Wall Street Journal* and *The Richmond Times Dispatch*), *aff'd in part on other grounds*, 668 F.3d 83 (4th Cir. 2012); *see also In re Chicago Pac. Corp.*, 773 F.2d 909, 911 (7th Cir. 1985) (accepting notice published once in *The Wall Street Journal*); *In re Government Securities Corp.*, 107 B.R. 1012, 1021-22 (S.D. Fla. 1989) (same); *In re Adler, Coleman Clearing Corp.*, 204 B.R. 99, 107 (Bankr. S.D.N.Y. 1997) (accepting notice published once in *The Wall Street Journal* and *The New York Times*). In this case, AMF published its notice in both a nationally distributed newspaper and the newspaper local to its base of operations near Richmond, Virginia. By publishing notice in general-circulation newspapers on both the national and local scale, AMF made reasonably sufficient efforts to give constructive notice to its unknown creditors. As explained in *Mullane*, the use of "probably futile means of notification" will not offend due process. 339 U.S. at 317. While that rule should not give debtors a free pass to dole out whatever paltry notice they desire, in this case, the timing and circulation of the notice was adequate.

Board next contends that the notice was constitutionally defective because an individual with a personal injury claim would not have known her claims were covered by the administrative claims bar date. In essence, Board argues that a lay creditor such as herself would not know that the notice's discussion of "allowed administrative claims" covered her claim against AMF. This argument proves too much, however, because the same reasoning might apply had the notice given the deadline for "post-petition tort claims." Importantly, the notice provided the following clear facts: (1) AMF was in bankruptcy proceedings in Richmond, Virginia, and in the process of reorganizing; (2) certain claims for money against AMF had filing deadlines of August 9, 2013; and (3) claims not filed before the deadline would be lost forever. The specific mechanics of the bankruptcy process may sometimes be confusing to a lay observer, but the use of legalese does not create a due process problem when the basic facts would alert a potential creditor that their claim could be affected and that they ought to seek legal advice. *See, e.g., In re Bennett*, 466 B.R. 422, 435 (Bankr. S.D. Ohio 2012) (explaining the need for a creditor to seek advice from its legal counsel if the creditor does not understand specific provisions of a bankruptcy plan); *In re Bi-Lo, LLC*, 2010 WL 3340521, at *6 (Bankr. D.S.C. Feb. 2, 2010) (denying due process challenge when "the forms as a whole are straightforward and it is not unreasonable to expect a party, sophisticated or not, to contact his or her attorney regarding information" contained within them); *see also Matter of Gregory*, 705 F.2d 1118, 1123 (9th Cir. 1983) ("Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led. When a person has sufficient information to lead him to a fact, he shall be deemed to be conversant of it." (quoting *D.C. Transit Systems, Inc. v. United States*, 531 F. Supp. 808, 812 (D.D.C. 1982)). In sum, a creditor reviewing the notice would know *something* was at stake and would wisely consult legal

counsel to assist with any confusing concepts. Accordingly, the language's complexity does not provide a basis for a due process challenge.

Finally, Board makes frequent reference to preferential treatment that post-petition tort claimants ought to receive under *Reading Company v. Brown*, 391 U.S. 471, 478 (1968). Unfortunately, Board extends the rule from *Reading* too far. In *Reading*, the Supreme Court held that the post-petition tort claims that arose during a Chapter 11 proceeding qualified as "actual and necessary costs" and, therefore, were entitled to priority as administrative claims. 391 U.S. at 485. Here, neither side argues, nor did the Bankruptcy Court below conclude, that somehow Board's tort claim was not an administrative claim entitled to a certain level of priority—if filed on time. Instead, Board seems to suggest that the spirit of *Reading* requires this Court to find that an unknown creditor with a post-petition tort claim against the debtor ought to receive notice above and beyond the notice required by *Mullane*, or perhaps that *Reading* counsels finding an exception to the bar date for an unknown post-petition tort claimant. She cites no support for those propositions, and the Court is unaware of any such rule. *See also In re Circuit City Stores, Inc.*, 2010 WL 2208014, at *8 (Bankr. E.D. Va. May 28, 2010) ("When it comes to sufficient notice of the Bar Date to satisfy due process, the Debtors need only inform potential claimants of the "time allowed for filing claims," not what claims those claimants might be able to assert." (citing Fed. R. Bankr. P. 2002(f)), *aff'd*, 439 B.R. 652 (E.D. Va. 2010), *aff'd in part on other grounds sub nom. Gentry v. Siegel*, 668 F.3d 83 (4th Cir. 2012). *Reading* provides no remedy for Board in this appeal.

## III. CONCLUSION

For the reasons discussed above, the Court affirms the Bankruptcy Court's November 18, 2014 Order denying Board's motion. The appeal is hereby dismissed. An appropriate Order shall issue.

The Clerk is directed to send a copy of this Opinion to all counsel of record.

Date: June 26, 2015
Richmond, Virginia

/s/ *signature*
John A. Gibney, Jr.
United States District Judge